MURPHY, Circuit Judge,
concurring in part and dissenting in part:
I agree that substantial evidence supports the BIA’s conclusion Li failed to demonstrate past persecution. I disagree, however, with the majority’s assertion that the record compels the conclusion there is a nexus between Li’s political opinion and any potential persecution she might suffer upon return to China.
To establish a well-founded fear of future persecution, Li must show her “fear of persecution is subjectively genuine and objectively reasonable.” Bringas-Rodriguez v. Lynch, 805 F.3d 1171, 1182 (9th Cir.2015) (quotation omitted). While Li’s subjective fear of future persecution based on political opinion may be genuine, the record does not compel the conclusion that her fear is objectively reasonable.
The record does not conclusively establish that the purpose of the first rally was political, rather than economic, in nature. Hu v. Holder, 652 F.3d 1011, 1018 (9th Cir.2011) (noting there is “no easy test” to make that determination). Instead, it can be read to support the BIA’s determination that the protestors, specifically including Li, were seeking the assistance of the local government to correct mismanagement at the mill and that Li’s actions, in this particular case, were economic *677 rather than political. Nor does the record support the majority’s conclusion that Li expressed her political opinions during questioning by authorities. During that interrogation, Li denied being an organizer of the protest and stated she merely wanted authorities to pay attention to the difficulties of the employees.[1] Unlike the other organizers, Li was quickly released from custody. For these reasons, the majority’s reliance on Zhiqiang Hu v. Holder, a case involving interrogators imputing a specific anti-government opinion to the petitioner, is misplaced. 652 F.3d 1011, 1017-18 (9th Cir.2011); see also INS v. Elias-Zacarias, 502 U.S. 478, 483-84, 112 S.Ct. 812, 117 L.Edüd 38 (1992) (holding that on appeal a petitioner must come forward with such compelling evidence of her persecutors’ motives that no reasonable factfinder would rule against her).
The record does not compel the conclusion Chinese authorities “violently targeted” Li at the second protest. Instead, the record fully supports the BIA’s determination that the authorities did not know Li was an organizer of the second protest at any point prior to the confrontation between the police and the protestors. The record likewise supports the BIA’s determination that the baton blow and kick suffered by Li were the result of the chaotic situation, rather than a targeted attack.[2]
That leaves the following facts: authorities came to Li’s home to look for her the night of the second protest, have continued to go to her house to check for her presence, and two other protest organizers have been imprisoned. The record does not, however, indicate upon what basis Li’s co-organizers were imprisoned. It is entirely possible they were cautioned after the first protest, as was Li, to avoid activities that might lead to public unrest (i.e., large street rallies) and were imprisoned when they failed to comply with these directives. See Elias-Zacarias, 502 U.S. at 483-84, 112 S.Ct. 812.
Although the record in this case would allow a factfinder to conclude there was a nexus between any persecution Li might suffer upon her return to China and a political opinion imputed to her by Chinese authorities, the record does not compel such a conclusion. As a consequence, there exists substantial evidence to support the BIA’s no-nexus finding. Id. For that reason, I respectfully dissent.

. The majority asserts authorities “accused” Li of being a "conspirator” and "plotter behind the curtain." The BIA reasonably interpreted the interrogation as questioning whether Li was an organizer, rather than accusing her of being one.

. In support of the assertion Chinese authorities violently targeted Li, the majority relies on a narrow portion of the record. The only pertinent portion is the following statement from Li: "The police, after getting out of their vehicles, started to, you know, catch and we, several leaders, and they whipped their police batons onto our employers.” This ambiguous statement is not sufficient to mandate a finding that authorities "targeted” Li at the second protest. This is especially true when one considers the broader record, That is, the record supports the BIA’s conclusion authorities did not know Li was an organizer at any point prior to the second protest; demonstrates Li just happened to be walking toward the front of the group of protestors; and supports the BIA’s finding that the blows resulted from chaotic police/protestor interactions, rather than from targeted violence. Thus, the record does not compel the conclusion Li was "targeted” for her political opinion at the second protest.